** Part I of Part II ** REORGANIZATION OF STATE GOVERNMENT Chapter 30 O.S.L. 1975, codified at 74 O.S. 541 [74-541] through 74 O.S. 1546 [74-1546] (1975), would be constitutional, except that the delegation of authority to the Governor, contained in Section 1545 thereof, to implement recommended plans of reorganization by Executive Order, cannot constitutionally be construed to encompass lawmaking authority, which would include the amendment, modification or repeal of the statutory powers, duties and functions of agencies, boards and commissions contrary to Article IV, Section 1, Article V, Section 1, Article V, Section 34, Article V, Section 57 and Article V, Section 58 and Article VI, Section 1 of the Oklahoma Constitution. The provisions of Subsection A of Section 5, Chapter 30 O.S.L. 1975, codified at 74 O.S. 1541 [74-1541] through 1546, delegating authority to the Governor to implement recommended plans of reorganization, cannot constitutionally be construed, under Sections 55 and 56, Article V of the Oklahoma Constitution, to include the reduction or transfer of existing appropriations to statutory agencies, boards and commissions of the state. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions relating to the constitutionality of enrolled Senate Bill No. 118 of the First Session of the 35th Legislature, enacted as Chapter 30 O.S.L. 1975, and codified at 74 O.S. 1541 [74-1541] through 74 O.S. 1546 [74-1546] (1975): 1. Is Senate Bill 118 an unconstitutional delegation of legislative authority to the Governor in violation of Sections 1 and 34 of Article V in that a procedure not authorized by the Constitution has been provided for the enactment of laws and for the amendment, revision or repeal of existing laws? 2. Does Senate Bill No. 118 violate Sections Article V, Section 55, Article V, Section 56 of Article V in that any effective reorganization of the agencies referred to in the Bill would require a transfer or reduction of existing appropriations to the affected agencies? 3. Does Senate Bill No. 118 violate Article V, Section 57 of the Oklahoma Constitution in that any reorganization plan adopted thereunder will involve a multiplicity of subjects rather than just one subject? 4. Is Senate Bill No. 118 unconstitutional for a lack of preciseness in defining the limits of power delegated to the Governor and for lack of standards to guide the Governor in the exercise of such power? 5. Does Senate Bill No. 118 violate Article IV, Section 1 of the Oklahoma Constitution in that it authorizes the Governor to exercise the lawmaking function? In looking to the constitutionality of an act of the Legislature, it has been held that such act is presumed to be constitutional unless its unconstitutionality is shown beyond a reasonable doubt. Schmitt v. Hunt, 359 P.2d 198 (1961). We must, therefore, presume at the outset that Senate Bill No. 118, enacted at Chapter 30 O.S.L. 1975, is constitutional unless it is shown beyond a reasonable doubt to be otherwise. The first four sections of the Act establish the Reorganization Commission and furnish the procedure for the preparation of recommendations. Because the Legislature restricted the Commission to making recommendations rather than making changes, no serious constitutional questions are posed. The Legislature is authorized to establish a temporary or permanent agency of government and confer the power to carry out the administrative responsibilities given to it. See, 1 Am.Jur.2d, Administrative Law, 106, page 904, citing Atchley v. Board of Barber Examiners of State, 257 P.2d 302
(1953) and Wells v. Childers, 165 P.2d 358 (1945). Section 5 of the Act, 74 O.S. 1545 [74-1545] (1975), reads as follows: "A. The Commission shall prepare recommendations for the reorganization of agencies, boards and commissions authorized or established by laws and the statutes of the State of Oklahoma. Such recommendation shall be in writing, and shall be delivered to the Governor of the State of Oklahoma, President Pro Tempore of the Senate and the Speaker of the House of Representatives. Should the Governor approve the recommendations, he may implement them by Executive Order. The Executive Order shall become effective in forty-five (45) legislative days after the convening of the Legislature unless rejected by either House or in forty-five (45) legislative days if the Legislature is in session and neither House disapproves. Provided that any Executive Order issued under this section within the last forty-five (45) days of any legislative session shall be considered as having been issued after the session was adjourned. "B. The Commission shall also submit recommendation to the 239 Governor for amendment of the Constitution of the State of Oklahoma, should any amendment or amendments be in the Commission's view necessary to a complete and efficient reorganization of the Executive Branch." (Emphasis added) Section 5 of the Act thus authorizes the Commission to recommend reorganization of existing statutory agencies, boards or commissions, and if the Governor approves the recommendations of the Commission he is authorized to implement them by Executive Order. Since the Act does not state otherwise, presumably, the Legislature intended for the term "implement", as used in that section, to have its common and ordinary meaning, which according to Webster's International Dictionary, Second Edition, at page 1250, is "to accomplish, fulfill, complete or carry out". An Executive Order to be issued under Section 5, however, is not effective until the expiration of the time period prescribed in that section, coupled with inaction by either House of the Legislature to reject such Executive Order carrying out the recommended reorganization. Further, Section 5 prescribes that the Commission's recommendations for reorganization are to relate to "agencies, boards and commissions authorized or established by laws and the statutes of the State of Oklahoma". In reading this provision along with Subsection B of that section, it clearly appears that the Legislature did not intend for the recommendation of the Commission under Subsection A to include reorganization of any constitutionally created agencies, boards or commissions referred to in Subsection B of that section. The serious constitutional questions are presented in Section 5 of the Act. These questions would arise factually at the time the Governor implements the recommendations of the Reorganization Commission. Although numerous ancillary questions are raised the most serious constitutional considerations are: (1) Separation of powers; (2) Constitutional procedure for enacting laws; and, (3) Preservation of the right of initiative and referendum. This opinion, then, will provide guidelines and prescribe the limits that apply to the actions of the Governor in carrying out the provisions of Senate Bill No. 118 in accordance with the well-established rules of law contained in prior Attorney General's opinions and court decisions of Oklahoma and other jurisdictions. SEPARATION OF POWERS Concerning separation of powers, Article IV, Section 1 of the Oklahoma Constitution provides as follows: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." (Emphasis added) Under the principle of separation of powers in a constitutional form of government, the executive branch can exercise no power not derived from the Constitution. In this connection, 16 Am.Jur.2d, Constitutional Law, 216, at page 458 and 459, provides as follows: "The executive power is the power to execute the laws, that is to carry them into effect, as distinguished from the power to make laws and the power to judge them. "All executive power is granted by the constitution and the executive branch can exercise no power not derived from the instrument." (Emphasis added) Consistent with these principles of separation of powers, 6 OKL. OP. A.G. 16 held that the Governor had no inherent authority under the Oklahoma Constitution to create by Executive Order any governmental entity possessing the capacity to discharge executive power, and 6 OKL. OP. A.G. 131 held that the Legislature could not in 74 O.S. 3301 [74-3301] through 74 O.S. 3305 [74-3305] (1974), delegate to the Governor the authority to create any such governmental entity. Concerning executive power or authority, Article VI, Section 1 of the Oklahoma Constitution, provides as follows: "The executive authority of the State shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, Commissioner of Insurance, and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books, and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law." (Emphasis added) Thus, the authority of the executive branch of government in Oklahoma is vested in those constitutional officers enumerated above and "other officers provided by law." This, of course, is different than the executive authority or power of the federal government under Article II of the United States Constitution which provides that "all executive power" is vested solely in the President rather than numerous constitutional and statutory officers, as is the case in Oklahoma. As stated in 6 OKL. OP. A.G. 16, Section 1 of Article VI, being exclusive, no officer or governmental entity can lawfully discharge "executive authority" unless such office has been created by statutory enactment or constitutional amendment. Thus, in Oklahoma lawful agencies, boards and commissions of the executive branch can exist only by virtue of the statutes or the Constitution. Further, as pointed out in that Opinion, Russell Petroleum Company v. Walker, 19 P.2d 582 (1933), held as follows: "Under the provisions of Article VI and Section 1 of Article IV of the Constitution, no order, proclamation, or decree of the Governor of the State, as chief executive officer thereof, has the force of law; the lawmaking power of the State being vested exclusively elsewhere." (Emphasis added) This case relied on the language in Articles IV and VI of the Oklahoma Constitution which has the effect of precluding the Legislature from giving the Governor any authority to issue an order having the force of law. This, of course, is consistent with the basic constitutional principle that the executive branch can exercise no power not derived from the Constitution. Concerning delegation of lawmaking authority by the Legislature, it is clear that the rule followed in Oklahoma is that expressed in Associated Industries of Oklahoma v. Industrial Welfare Commission, et al., 90 P.2d 899 (1939), wherein the court stated in the fourth syllabus as follows: "Power to determine the policy of the law is primarily legislative and cannot be delegated whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated." The "policy of the law" contained in Senate-Bill No. 118 is clearly the structure of the executive branch of state government. The rule enunciated in the Associated Industries case, supra, if applied to the instant question, would provide that the power to determine such policy "cannot be delegated". This rule is also followed in Gibson Products Company of Tulsa v. Murphy, 100 P.2d 453 (1940); Rush v. Brown, 101 P.2d 262
(1940); Casualty Reciprocal Exchange v. Sutfin, 166 P.2d 434
(1946); Atchley v. Board of Barber Examiners, supra; Schmitt v. Hunt, supra; Isaacs v. Oklahoma City, 437 P.2d 229, cert. den., 389 U.S. 825, 19 L.Ed.2d 79 (1967); and Oklahoma Alcoholic Beverage Control Board v. Welch,446 P.2d 268 (1968). In the Casualty Reciprocal Exchange case, supra, the court held that the power to amend existing laws clearly cannot be delegated by the Legislature, and stated at page 439 of the opinion as follows: "Authority to amend cannot be delegated to an administrative board." Likewise, in the Oklahoma Alcoholic Beverage Control Board case, supra, the court stated at page 270 of the opinion as follows: "The Legislature cannot delegate authority to an administrative Board to amend or subvert a statute. . . ." In the Isaacs case, supra, the court stated at page 223 of the opinion as follows: "In addition thereto, we have consistently held in the past, in a variety of factual situations that the legislature has no authority to delegate power to an administrative board to make laws, but it may delegate to an administrative board the authority to prescribe and enforce rules and regulations to carry into effect and to aid in the enforcement of existing laws. See Rush v. Brown, 187 Okl. 97, 101 P.2d 262, and also in the case of Harris v. State, ex rel. Oklahoma Planning Resources Board, 207 Okl. 589, 251 P.2d 799, we quoted with favor the following: "'The Legislature cannot delegate legislative power, but it may delegate authority or discretion to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend.' " (Emphasis added) We find no Oklahoma case law passing upon the exact question presented herein, involving the delegation of authority by the Legislature to the Governor to reorganize statutory agencies, boards and commissions. In fact, this is the first instance of attempted reorganization through legislative authorization to a commission and the Governor. Several instances of reorganization have been accomplished through direct statutory changes. Other attempts were in the nature of joint resolutions calling for constitutional amendments to accomplish reorganization, the most recent being Senate Joint Resolution No. 22 of the 34th Legislature (1974), which was rejected by the people of the state at a special election held on August 27, 1974. Schmitt v. Hunt, supra, is the latest Oklahoma case dealing with the specific question of the authority of the Governor to issue Executive Orders affecting state agencies. That case held that the provisions of the Merit System Act, which authorizes the Governor by Executive Order to extend the Merit System to employees of state agencies or departments not specifically covered under the terms of the Act itself, was not an unconstitutional delegation of legislative authority to the Governor. The Merit System Act in the Schmitt case, supra, set forth all of the provisions, terms, and conditions of the Merit System, but left to the Governor the authority to extend the Act by Executive Order to those agencies not specifically covered in the Act. From the opinion in the Schmitt case, supra, it clearly appears that the court did not view the authority granted to the Governor under the Merit System Act as constituting lawmaking authority, since the extension of the provisions and terms of the Act itself to employees of those state agencies and departments not specifically mentioned in the Act did not in any way "curtail" the prescribed powers and duties of those agencies or departments. In this respect, the Act gave the Governor no authority to change the terms and conditions of the Merit System itself which were already established by the Act. The court stated, at page 203 of the opinion, as follows: "We do not see how the Merit System Act in any way curtails the powers and duties of the Insurance Department or Insurance Commissioner provided by our Constitution. It simply furnishes a different method for obtaining personnel. Those provisions of the statute which effect these two agencies were made by the Legislature and can be changed by the Legislature." (Emphasis added) From the foregoing, it is clear that the holding in the Schmitt case, supra, was based on the fact that the authority granted the Governor in the Merit System Act did not encompass amending or repealing any existing statutes, and did not curtail or otherwise effect the powers and duties of state agencies and departments which are either legislatively or constitutionally vested with "executive authority" or power under Section 1, Article VI of the Oklahoma Constitution. The test applied in the Schmitt case, supra, was whether the Executive Order issued pursuant to the Merit System Act "curtailed" the powers and duties of agencies. We would expect the Oklahoma Supreme Court to apply the same test to an Executive Order issued pursuant to Senate Bill No. 118. Two cases from other jurisdictions have been found on the question of legislative delegation of authority to the Governor to reorganize state agencies, boards and commissions. See Opinions of Justices, 83 A.2d 738 (1950) and Brown v. Heymann, 297 A.2d 572 (1972). In the case of Opinions of Justices, supra, the New Hampshire Supreme Court held that an act of the Legislature providing for the Governor to prepare a plan reorganizing state agencies, boards and commissions which, after being submitted to a Legislature, would become effective upon the passage of twenty-five legislative days, coupled with in action on the part of the Legislature, was not a delegation of legislative power to the executive branch of government, but did violate constitutional provisions relating to the enactment of law by the Legislature, since such act provided that the plan would become effective as law as the result of the Legislature failing to reject the plan by concurrent resolution. In that case the court stated at pages 740 and 741 of the opinion as follows: "Thus the enactment of any reorganization plan or plans into law is made to depend not upon any act of the Governor, but on the contrary wholly upon the conduct of the Legislature, whether that conduct be action or inaction, during a period of twenty-five legislative days following the date of transmittal. We do not perceive that these provisions constitute a delegation of legislative authority to the Governor . . . Only the lapse of twenty-five 'legislative' days, coupled with inaction on the part of the Legislature, or its adjournment during that period is sufficient under the Act to give the plan or plans a character of law. . . . "In a sense the act provides for reversal of the democratic process required by the Constitution for under it the Governor would propose the legislative action, rather than approve or disapprove action taken." (Emphasis added) In Brown v. Heymann, supra, the Supreme Court of New Jersey held that the New Jersey Executive Reorganization Act providing that the Governor shall prepare a plan of reorganization which shall take effect within sixty days unless rejected by concurrent resolution of the Legislature, was not an unconstitutional delegation of legislative power. From the opinion in the Brown case, supra, it appears that the Court clearly found that the Legislature intended in the New Jersey Reorganization Act to delegate authority to the Governor but that such delegation was not unconstitutional. From a further reading of the opinion in that case, however, it is clear that the New Jersey rule on delegation of legislative authority is different from that followed in Oklahoma, previously stated herein. In this respect, the court in the Brown case, supra, stated at page 577 of the opinion as follows: "For present purposes, we think it enough to ask whether the statute so enhances the executive power as to threaten the security as against aggregated power which the separation of powers doctrine was designed to provide. We must assume the Legislature found there is no such threat, and we must accept the evaluation unless it is plainly wrong."