Merrimack
No. 78-085

RICHARD C. KIMBALL *&a.*

v.

THE NEW HAMPSHIRE BOARD OF ACCOUNTANCY

September 18, 1978

*Wiggin & Nourie*, of Manchester (*Kurt M. Swenson* orally), for the plaintiff.

*Thomas D. Rath*, attorney general (*Andrew R. Grainger* orally), for the State.

DOUGLAS, J. The question in this case is whether the New Hampshire Board of Accountancy exceeded its statutory authority when it promulgated a regulation requiring "[a]ll partners of partnerships practicing public accounting in the State of New Hampshire [to] either be 'certified public accountants' or 'public accountants' licensed in some state or other jurisdiction."

According to an agreed statement of facts, N. F. Bigelow & Company was formed in 1972 and is a firm doing business as a partnership. As the only firm in the State that practices accountancy and that consists of partners who are accountants and partners who are not, Bigelow is uniquely affected by the above-quoted regulation No. 10. When the board, despite intense opposition from Bigelow, adopted the regulation in June 1976, the firm brought this declaratory judgment action pursuant to RSA 541-A:7. The petition alleged that in adopting regulation No. 10 the board went beyond its statutory rule-making authority and otherwise violated certain constitutional rights. The Master (*Robert A. Carignan*, Esq.) recommended dismissal. *Johnson*, J., approved the recommendation and reserved and transferred the plaintiff's exceptions to this court. We reverse.

 Rules adopted by State boards and agencies may not add to, detract from, or in any way modify statutory law. *In re Jack O'Lantern*, 118 N.H. 445, 448, 387 A.2d 1166, 1168 (1978). The rule-making authority is granted to permit boards to fill in details to effectuate the purpose of the statute. *Reno v. Hopkinton*, 115 N.H. 706, 707, 349 A.2d 585, 586 (1975). Indeed, a legislative enactment that gives a board greater discretion than that needed to "fill in details" is invalid. *Ferretti v. Jackson*, 88 N.H. 296, 302, 188 A. 474, 478 (1936); *State v. Normand*, 76 N.H. 541, 85 A. 899 (1913). If a board, in making a rule, acts beyond the limited discretion granted by a valid enactment, the rule is invalid. *See Harkeem v. N.H. Dep't of Empl. Sec.*, 115 N.H. 658, 348 A.2d 711 (1975). This court has very recently applied this principle. In *Blue Mountain Forest Association v. Croydon*, 117 N.H. 365, 373 A.2d 1313 (1977), we struck down an agency determination of taxpayer liability that focused on the taxpayer's purpose in use rather than on land treatment as required by the "Current Use Taxation" statute, RSA ch. 79-A. The *Jack O'Lantern* case involved an order of the assistant commissioner of the New Hampshire Department of Public Works and Highways that a sign be removed because its primary purpose was to advertise a resort, the principal business of which was not located near the sign. We invalidated the order because a test involving "primary purpose" and

"principal business" is not contemplated by the statute that governs the placement of signs, RSA 249-A:5 III(c). It is the responsibility of this court to insure that another will is not substituted for that of the legislature when, out of necessity, it delegates certain limited powers. *See Ferretti v. Jackson*, 88 N.H. at 305, 188 A. at 479.

In 1971 the General Court established the New Hampshire Board of Accountancy and empowered it to "make all rules and regulations necessary to carry into effect the purposes of this chapter." RSA 309-A:2 I. With respect to the composition of partnerships within the accountancy profession, the legislature enacted two sections: RSA 309-A:7 permits the use of the words "certified public accountants" or the abbreviation "C.P.A.'s" in connection with a firm name only when all partners are C.P.A. certificate holders; RSA 309-A:9 allows the use of "public accountants" in a firm name only when all the partners are licensed public accountants.

■ An examination of RSA ch. 309-A as a whole reveals a general legislative purpose to establish a licensing system for the protection of both the accountancy profession and the public. In keeping with this purpose, sections 7 and 9 preclude the misleading *use* of "certified public accountants," "C.P.A.'s" or "public accountants" in firm *names*. These sections discuss the composition of partnerships only as it relates to firm names. Clearly the accountancy board is empowered to inquire into the make-up of an accountancy partnership when the name of that partnership contains one of the three phrases considered by the legislature to be potentially misleading. But regulation No. 10 affects the internal composition of all accountancy firms regardless of firm names. This defect is fatal and we hold the regulation invalid.

■ It is unnecessary to consider in detail the Contract Clause argument raised by Bigelow. U.S. CONST. art. I, § 10, cl. 1. However, we note that a partnership agreement formalizes a relationship among parties in which certain property rights may be vested. *See Rosenblum v. Judson Engineering Corp.*, 99 N.H. 267, 269, 109 A.2d 558, 560 (1954). "No state shall . . . pass any law . . . impairing the obligation of contracts." U.S. CONST. art. I, § 10, cl. 1. The Supreme Court has recently pointed out that "the Contract Clause remains part of the Constitution. It is not a dead letter." *Allied Structural Steel Co. v. Spannaus*, 46 U.S.L.W. 4887, 4889 (1978). "[The Contract Clause] must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." *Id.* In the present case,

the partners of N. F. Bigelow & Company chose partnership as the mode of organization best suited to their particular business needs and interests years before the regulation was issued. They were entitled to rely on the rights and obligations created under the partnership. *Id.* at 4890. In discussing the circumstances under which a State might validly interfere with private contractual obligations, the Court in *Allied* cites *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934), with approval. That case upheld a State mortgage moratorium law, but *only* because the law met an emergency need, protected a basic societal interest, was appropriately tailored to the targeted emergency, imposed reasonable conditions on private parties, and was limited to the duration of the emergency. Regulation No. 10 cannot meet such a test.

*Exceptions sustained.*

BROCK, J., did not sit; the others concurred.