Merrimack
No. 80-087

SMITH INSURANCE, INC.

v.

THE GRIEVANCE COMMITTEE & a.

December 23, 1980

*Barto & Gfroerer*, of Concord (*Michael G. Gfroerer* orally), for Smith Insurance, Inc.

*Gregory H. Smith*, acting attorney general (*Andrew R. Grainger*, assistant attorney general, orally), for the Grievance Committee.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Charles J. Dunn* orally), for Middlesex Insurance Company.

*Sheehan, Phinney, Bass & Green*, of Manchester (*Nicholas J. Lazos* orally), for the intervenors, Independent Insurance Agents of New Hampshire and Professional Insurance Agents of New England.

KING, J. In this case we address the constitutionality of RSA 402:75 (Supp. 1979), establishing the Grievance Committee empowered to review the termination by insurance companies of agency agreements between the companies and their agents. We

hold that the statute is unconstitutional as an unlawful delegation of legislative power, an unlawful usurpation of judicial power, and an unlawful interference with pre-existing contracts.

In December 1976, Middlesex Insurance Company appointed Smith Insurance, Inc. as one of its agents. The written agreement provided that "[t]his Agreement may be terminated by either the Company or the Agent on written notice to the other . . . ." Pursuant to this provision, Middlesex notified Smith in November 1978 that the agency relationship was to be terminated effective May 26, 1979.

On April 26, 1979, the plaintiff filed a complaint against Middlesex with the Grievance Committee. At a hearing held by the committee on June 12, 1979, the plaintiff alleged that Middlesex had violated several statutes and regulations of the New Hampshire Insurance Department in the course of its dealings with the plaintiff. Specifically, the plaintiff alleged that Middlesex had violated the following statutes: RSA 402:15-c II (Supp. 1979) requiring that licensed insurers give ninety days written notice of termination of insurance agency contracts; RSA ch. 404-C (Supp. 1979) pertaining to the establishment, contents, participation, and provisions of mandatory risk-sharing plans; RSA 417:4 VIII(e) (Supp. 1979) defining as an unfair trade practice discrimination between individuals of the same class and risk in the policy amount, premium or rates charged, or benefits for health insurance policies; and RSA 417-A:3 (Supp. 1979) covering obligations of insurers in the cancellation or refusal to write or renew an automobile insurance policy.

In addition, the plaintiff complained that Middlesex had violated Insurance Department regulation 11, I, A(2)(g) in that a pattern of agency terminations evidenced an intent to violate RSA 417-A:3 (Supp. 1979) indirectly. Finally, the plaintiff alleged that Middlesex had violated Insurance Department regulation 14, art. XI(2) relating to indemnification where a person is threatened to be made a party to an action because he served on the Board of the New Hampshire Automobile Reinsurance Plan, and regulation 14, art. IV(7) regulating meetings of the Board of Governors which oversees operation of the risk sharing pool for insurers.

On July 18, 1979, the Grievance Committee issued an order upholding Middlesex's termination of the plaintiff's agency status but extended the effective termination date to November 26, 1979. The relatively brief order of the Grievance Committee reads in part as follows:

"The Committee finds that the termination of Smith

Insurance, Inc. was not accomplished for the purpose of 'red-lining' the Portsmouth marketplace, or any other purpose which would amount to avoiding statutory and regulatory obligations with respect to merchandising insurance. Further, the Committee finds that Middlesex Insurance Company did not violate its obligation to deal in good faith with Smith Insurance Company, Inc. The Committee finds that the termination was occasioned by proper concerns as to the business effectiveness of the agency.

Notwithstanding the above findings, it is the judgment of the Committee that the termination process was marked by certain deficiencies. The Committee notes in particular the use of non-renewals stating—prematurely—that the agency no longer represented the company. The deficiencies in the termination process do not warrant the reinstatement of the agency contract, but are grounds for extending its termination date.

ORDERED, that the Middlesex Insurance Company extend the present termination date of its contract with Smith Insurance by a period of six (6) months."

The plaintiff appealed the decision of the Grievance Committee to the superior court pursuant to RSA 402:75 (Supp. 1979) and requested a trial de novo. The Grievance Committee, represented by the office of the New Hampshire Attorney General, and Middlesex responded to the plaintiff's appeal by asserting that RSA 402:75 (Supp. 1979), creating the Grievance Committee, is unconstitutional. Middlesex further contended that the plaintiff is not entitled to a trial de novo in the superior court. The Independent Insurance Agents of New Hampshire and the Professional Insurance Agents of New England, both of which are represented on the Grievance Committee and appear as intervenors, disagree with the position taken by the attorney general's office in admitting the unconstitutionality of the statute.

Relying upon the position of the attorney general's office, the chairman of the Grievance Committee, the New Hampshire Insurance Commissioner, has refused to hear further grievances brought by insurance agents, thereby effectively vitiating the role of the Grievance Committee. Other cases currently pending in the superior court involve issues similar to those raised in this case.

The Superior Court (*Cann,* J.), in accordance with RSA 491:17, transferred the following questions of law to this court:

"A. Is RSA 402:75 and the procedure established thereunder for hearing and acting upon grievances brought by insurance agents relating to termination of their contracts with insurance companies, constitutional?

B. Is a party which appeals a decision of the grievance committee pursuant to RSA 402:75 entitled to a trial de novo in superior court?"

As originally enacted, RSA 402:75 (Supp. 1979) read as follows:

"402:75 Grievance Committee. There is hereby established a grievance committee to be composed of the insurance commissioner, who shall be the chairman of the committee; one New Hampshire representative from the Independent Mutual Agents of New England; and one representative from each of the following organizations: the New Hampshire Independent Insurance Agents' Association; the American Insurance Association and the American Mutual Insurance Alliance. The committee members shall serve for a 2 year term, without compensation. The committee shall hold hearings on grievances brought by insurance agents relating to termination of their contracts with insurance companies, and the committee may order the insurance company to rescind termination. The decision of the committee may be appealed to the superior court."

Laws 1977, 566:2. The legislature has since amended the statute by substituting, as members, the Professional Insurance Agents of New England for the Independent Mutual Agents of New England, the Independent Insurance Agents' Association of New Hampshire for the New Hampshire Independent Insurance Agents' Association, and the Alliance of American Insurers for the American Mutual Insurance Alliance. See Laws 1979, 448:1. The amendment also changed the subject matter of the committee's jurisdiction from "contracts" to "property and casualty contracts." See id. Neither of these changes, however, is material to the issues raised in this case.

The Grievance Committee has no regulatory function over insurance agency contracts and is merely empowered to "order . . . [an] insurance company to rescind [its] termination . . ." of an insurance agency contract. RSA 402:75 (Supp. 1979). As a consequence, neither insurance agents nor insurance companies are able to conform their conduct to the requirements of the statute. For example, unlike RSA ch. 357-B (Supp. 1979), the

statute regulating business practices between motor vehicle manufacturers, distributors, and dealers, RSA 402:75 (Supp. 1979) lacks a statement of public policy, or a purpose to protect any basic societal interest or any reasonably outlined policy for the administration of the law. For practical purposes, RSA 402:75 (Supp. 1979) is an extension of the powers of the executive branch of government with unguided and unrestricted discretion to determine when important insurance contracts mutually negotiated may be terminated. It fails to lay down any rules by which the administrative agency may be guided in the exercise of its discretion.

■ While the Supreme Court of the United States and this court have often considered the extent to which the power to legislate may be delegated to an agency of the executive branch of government, neither court has developed precise or dogmatic tests for determining whether a particular grant is excessive. It is clear, however, that a sweeping and general delegation of power with uncontrolled discretion even in a narrow field exceeds constitutional limits. *See Schechter Corp. v. United States*, 295 U.S. 495, 537–38 (1935); *Ferretti v. Jackson*, 88 N.H. 296, 303–04, 188 A. 474, 479–80 (1936).

The State Constitution provides that the three branches of government should be "kept as separate from, and independent of, each other, as the nature of a free government will admit. . . ." N.H. CONST. pt. 1, art. 37. This court has consistently recognized, however, that the three branches cannot be completely separate. *Monier v. Gallen*, 120 N.H. 333, 339, 414 A.2d 1297, 1301 (1980); *Opinion of the Justices*, 118 N.H. 582, 585, 392 A.2d 125, 127 (1978).

■ Under the separation of powers article of the New Hampshire Constitution, the General Court may not create and delegate duties and powers to an administrative agency if "its commands are in such broad terms as to leave the . . . agency with unguided and unrestricted discretion in the assigned field of its activity. . . ." *Ferretti v. Jackson, supra* at 302, 188 A. 478. Consequently, because RSA 402:75 (Supp. 1979) is devoid of either a declared policy or a prescribed standard laid down by the legislature, *see Velishka v. City of Nashua*, 99 N.H. 161, 167, 106 A.2d 571, 575 (1954); *Firemen's Insurance Co. v. Houle*, 96 N.H. 30, 32, 69 A.2d 696, 698 (1949); *Conway v. Water Resources Board*, 89 N.H. 346, 352, 199 A. 83, 88 (1938), it represents an

unconstitutional delegation of legislative power by the General Court in violation of N.H. CONST. pt. 1, art. 37.

Similarly, the United States Constitution requires that a legislative authority creating and delegating powers to an administrative agency "lay down . . . an intelligible principle to which the person or body authorized to . . . [act] is directed to conform. . . ." *Hampton & Co. v. United States*, 276 U.S. 394, 409 (1928). RSA 402:75 (Supp. 1979) neither declares the legislative policies which underlay the enactment of the statute nor establishes standards to guide the Grievance Committee in the exercise of its power.

■ This court has long recognized that executive officers may be vested with some judicial power to enable them to perform practically their executive duties and that some overlapping of judicial power is permissible, *Opinion of the Justices*, 87 N.H. 492, 493, 179 A. 344, 345 (1935), although the extent to which such overlapping is permissible cannot be delineated with certainty. If, however, the duty of an executive board is primarily to decide questions of legal rights between private parties that are unconnected to any regulatory function, as appears to be the case with the Grievance Committee, such function belongs to the judiciary. Courts of justice, in their popular sense, even of restricted jurisdiction, may not be set up in the executive branch of government. *Id.*

■ The Grievance Committee has no ascertainable regulatory function. It is solely empowered to hold hearings on private disputes between insurance agents and insurance companies relative to the termination of their contracts and to give some equitable relief in the form of an order requiring the insurance company to rescind its termination of the agency contract. The allegations in the complaint by Smith against Middlesex sounding in equity, breach of contract, or bad faith, are causes of action more properly instituted and determined in the superior court. Notwithstanding the provision allowing an appeal to the superior court, the statute represents an encroachment on the power of the judicial branch of the State government in violation of the requirement of the separation of powers contained in the constitution of this State. *See Opinion of the Justices, supra* at 493–94, 179 A. at 345.

■ Both the State Constitution and the Federal Constitution prohibit the legislature from impairing the integrity of contracts. U.S. CONST. art. I, § 10, cl. 1; N.H. CONST. pt. 1, art. 23. While

these constitutional provisions prohibit the General Court from passing any law impairing the obligation of contracts, they do not deprive the General Court of its power to enact statutes under the police power. This admittedly broad power includes the power to legislate in furtherance of such diverse interests as public health, safety, comfort, protection of property, and general welfare. The wisdom, effectiveness, and economic desirability of a statute is not for us to decide. Nor may we substitute our judgment for that of the legislature. Nevertheless, the contract clause "is not a dead letter" and does "impose some limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 569, 391 A.2d 888, 890 (1978), *quoting Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978).

The United States Supreme Court recognized in *Allied Structural Steel Co. v. Spannaus, supra* at 250, that a statute which "work[s] a severe, permanent, and immediate change in . . . [a contractual relationship] irrevocably and retroactively" is rendered unconstitutional by the contract clause of the United States Constitution. In this case, the parties expressly agreed that "[t]his Agreement may be terminated by either the Company or the Agent on written notice to the other. . . ." RSA 402:75 (Supp. 1979) would irrevocably and retroactively alter this contractual relationship by depriving the company of its expressly reserved right to terminate the agreement, which was entered into prior to the effective date of the statute. *Appeal of Pennichuck Water Works*, 120 N.H. 562, 419 A.2d 1080 (1980); *Geldhof v. Penwood Associates*, 119 N.H. 754, 407 A.2d 822 (1979).

The answer to question "A" is that RSA 402:75 (Supp. 1979) is unconstitutional as an unlawful delegation of legislative power to the executive branch, an unlawful usurpation of judicial power, and an unlawful interference with existing contract rights. Question "B" thus becomes moot, and we do not reach it.

*Remanded.*

BROCK, J., did not sit; the others concurred.