Request of the House of Representatives
No. 81-166

OPINION OF THE JUSTICES

June 23, 1981

554

The following resolution, House Resolution No. 35, requesting an opinion of the justices was adopted by the house of representatives on May 14, 1981, and filed in the supreme court on May 15, 1981:

"Whereas, the House of Representatives has before it SB 95, as amended, An Act requiring agencies to submit proposed rules for legislative approval prior to filing a notice of intended action; and

"Whereas, questions have been raised as to the constitutionality of provisions in SB 95 regarding legislative review of administrative rules; and

"Whereas, the House of Representatives therefore wishes the Court to resolve these questions on the constitutionality of SB 95 before taking any further action on these bills; now, therefore, be it

"Resolved by the House of Representatives:

"That the Supreme Court is respectfully requested to give their opinion upon and answer the following question:

"Under the provisions of SB 95 designated standing committees of both houses of the general court are empowered to review rules proposed by State agencies and to reject the proposed rules. Does the legislative review of proposed rules as established in SB 95, including, but not limited to, the provisions of RSA 541-A:2-b, RSA 541-A:2-c and RSA 541-A:2-d as inserted by the bill, violate the New Hampshire Constitution, Pt. 1, arts. 29 or 37, or Pt. 2, arts. 2, 5, 24 or 44 or any other provision of the State Constitution?

"That the clerk of the House transmit copies of this resolution to the Justices of the New Hampshire Supreme Court."

The following answer was returned:

*To the Honorable House of Representatives:*

The undersigned justices of the supreme court reply as follows to your request filed in this court on May 15, 1981:

Your question asks that we render our opinion on the constitutionality of Senate bill 95, which would amend the Administrative Procedures Act, RSA ch. 541-A, by creating a mechanism by which the legislature could review, and either accept or reject, rules proposed by State administrative agencies. The essence of the request concerns the extent to which a "legislative veto" power over rules promulgated by administrative agencies may be constitutionally permitted.

Initially, proposed RSA 541-A:2-a would require an administrative agency contemplating the promulgation of new rules to give notice of its intended action to the legislative leadership. This notice would include the agency's purpose in promulgating the proposed rule, the estimated cost to the State or persons affected by the proposed rule, and reference to the statutory authority for the proposed rule. This cost-benefit analysis has recently been implemented for rules at the federal level. *See* Exec. Order No. 12,291 (Feb. 17, 1981), 1981 U.S. Code Cong. & Adm. News, Pamphlet No. 1, p. B4 Justice Department, Office of Legal Counsel; Memorandum Assessing Legality of Proposed Executive Order (Feb. 13, 1981), 49 U.S.L.W. 2556–57 (March 3, 1981). It presents no constitutional problem.

Sections 2-b through -d of the proposed statute require approval of most rules within thirty days of their submission to the designated legislative committees. If the procedural steps outlined in the bill do not lead to approval or rejection of the proposed rule, it shall be deemed approved by the appropriate legislative committee. These three sections of the bill raise troublesome questions of separation of powers between the executive and legislative branches of government.

 The concept of the separation of powers contained in virtually every American constitution was designed to protect the people from the tyranny of government which could result from the accumulation of unbridled power in any one branch of the government. THE FEDERALIST No. 47 (Madison). Our State constitution specifically provides that the legislature has "[t]he supreme legislative power," N.H. CONST. pt. 2, art. 2; the Governor has the executive power. N.H. CONST. pt. 2, art. 41; and the courts have the judicial power, N.H. CONST. pt. 2, art. 72-a. We have long acknowledged that the complete separation of powers would interfere with the efficient operation of government, and that consequently there must be some overlapping of the power of each branch. *Monier v. Gallen*, 120 N.H. 333, 339, 414 A.2d 129, 130 (1980); *Opinion of the Justices*, 87 N.H. 492, 493, 179 A. 344, 345 (1935). The drafters of our constitution recognized this political reality and provided that ". . . the three essential powers . . . [of government] ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of unity and amity." N.H. CONST. pt. 1, art. 37; *see Opinion of the Justices*, 118 N.H. 582, 585, 392 A.2d 125, 127–28 (1978).

██ ██ The powers of government cannot be readily or rigidly compartmentalized. There are some governmental powers which properly may be said to belong to more than one branch of the government. II R. POUND, JURISPRUDENCE 330-31 (1959); *Opinion of the Justices*, 118 N.H. 582, 585, 392 A.2d 125, 127–28 (1978); *see Ferretti v. Jackson*, 88 N.H. 296, 299, 188 A. 474, 476–77 (1936). It is clear, however, that an improper imposition upon one branch of government of the powers of another branch or an encroachment upon the powers of one branch by another branch violates the separation of powers requirement of the constitution. *Opinion of the Justices*, 110 N.H. 359, 363, 266 A.2d 823, 826 (1970); *Merrill v. Sherburne*, 1 N.H. 199 (1818).

██ It is well settled in this State that the legislature may delegate to administrative agencies the power to promulgate rules necessary for the proper execution of the laws. *Ferretti v. Jackson,* 88 N.H. at 298, 188 A. at 476; *Smith Insurance, Inc. v. Grievance Committee,* 120 N.H. 856, 861, 424 A.2d 816, 819 (1980); *Petition of Boston & Maine Corp.,* 109 N.H. 324, 326, 251 A.2d 332, 335 (1969). But the legislature may not, of course, delegate unlimited rulemaking authority to administrative agencies. *Smith Insurance, Inc. v. Grievance Committee, supra* at 861, 424 A.2d at 819. Rather, the legislature must declare a general policy and prescribe standards for administrative action. *Ferretti v. Jackson,* 88 N.H. at 303, 188 A. at 479.

 Accordingly, the rulemaking authority which may be delegated by the legislature is limited. The administrative agency's authority allows it to "fill in details to effectuate the purpose of the statute," *Kimball v. N.H. Bd. of Accountancy,* 118 N.H. 567, 568, 391 A.2d 888, 889 (1978); *Reno v. Hopkinton,* 115 N.H. 706, 707, 349 A.2d 585, 586 (1975), and administrative rules which go beyond the filling in of details are invalid. *Kimball v. N.H. Bd. of Accountancy, supra* at 568, 391 A.2d at 889; *see Reno v. Hopkinton, supra* at 708, 349 A.2d at 586. "Rules adopted by State boards and agencies may not add to, detract from, or in any way modify statutory law." *Kimball v. N.H. Bd. of Accountancy, supra* at 568, 391 A.2d at 889. Traditionally it has been the responsibility of this court to insure that the administrative agency does not substitute its will for that of the legislature. *Id.* at 569, 391 A.2d at 889.

"The consistent growth of administrative authority is an outstanding feature of contemporary government." Schwartz, *The Legislative Veto and the Constitution—A Re-examination,* 46 GEO. WASH. L. REV. 351, 353 (1978). The delegation of some lawmaking authority is a necessary feature of modern government because the current degree of regulatory activity can only be performed by administrative agencies. *Id.*

 The delegation of limited lawmaking authority to administrative agencies, however, does not relieve the legislature of its responsibilities. We believe that legislative supervision of administrative agencies through constant statutory modification of their activities could be cumbersome and ultimately be doomed to fail. Likewise, the indirect supervision of administrative agencies through legislative budgetary pressure, as well as the intense scrutiny of executive appointments, is unsatisfactory. *See Opinion of the Justices,* 117 N.H. 398, 401, 377 A.2d 638, 639–40 (1977). The increas-

ing use of provisions allowing for legislative veto of administrative lawmaking is a direct reflection of the growing interest in more effective legislative supervision of agency activity. Schwartz, *supra* at 353.

As Professor Schwartz noted:

> "The legislature is, of course, subject to direct control through the electoral process. There is no comparable control when law is made by administrative agencies. Although the famous characterization of federal agencies by the President's Committee on Administrative Management as 'a headless "fourth branch" of the Government, a haphazard deposit of irresponsible agencies and uncoordinated powers' is exaggerated; too many agencies are not responsible for the details of their operations to the executive or legislative branches or to the electorate."

Schwartz, *supra* at 353.

The popularity of this mechanism to control the so-called "fourth branch" of government is demonstrated by the fact that legislative veto provisions were included in federal legislation at least 83 times in 126 different acts of Congress between 1933 and 1976. *Id.* at 357 (citing H.R. REP. No. 1014, 94th Cong., 2d Sess. 14 (1976)). These provisions covered a range of subjects from national rail proposals to election regulations. At the State level, at least twenty-eight States have adopted some form of legislative review of administrative rulemaking. *Id.* at 362 & n.90.

The justices have previously, on two occasions, addressed the constitutionality of statutes containing legislative veto provisions. On the first occasion, three justices considered a proposed legislative scheme, modeled on federal legislation, that would allow the executive to restructure the executive department subject to the power of the legislature to reject the plan. *Opinion of the Justices*, 96 N.H: 517, 83 A.2d 738 (1950). In that *Opinion*, the justices stressed that the proposed statute was not an unconstitutional delegation of legislative power to the executive because the plan proposed by the executive would only become law with the approval of the legislature expressed either through express approval or the failure to disapprove. *Id.* at 521, 83 A.2d at 740–41. A majority of three justices concluded, however, that the scheme nonetheless offended the constitution because the proposed plan could become law if the legislature approved it, failed to reject it, or adjourned itself, and the State constitution provides that the enactment of laws requires the separate action of both houses with a majority of a quorum of both houses voting to approve, followed by presenta-

tion of the enactment to the executive. *Id.* at 521–22, 83 A.2d at 741–42.

Twenty years later, justices in another divided opinion upheld the constitutionality of a proposed bill which would grant the executive the power to raise the salaries of certain specified positions if certain criteria were met and the legislative fiscal committee approved. *Opinion of the Justices,* 110 N.H. 359, 266 A.2d 823 (1970). There it was the opinion of the justices that the legislature had the authority to delegate to the executive the power to raise salaries and to condition its exercise upon approval of a legislative committee. *Id.* at 364–65, 266 A.2d at 826–27.

 Rules and regulations promulgated by administrative agencies pursuant to a valid delegation of authority have the force and effect of laws. *Ferretti v. Jackson,* 88 N.H. at 278, 188 A. at 476. Lawmaking is primarily a legislative rather than an executive function. *See* N.H. CONST. pt. 2, arts. 2, 5. The executive is responsible for the "faithful execution of laws." N.H. CONST. pt. 2, art. 41. Although the chief executive has discretion in performing his duties, he has no authority to make laws. This being so, the rulemaking authority of administrative agencies in the executive branch derives solely from that power which the legislature delegates to them. Because the legislature may delegate some of its lawmaking authority to administrative agencies, it may properly condition the exercise of that delegated authority upon its approval. *Opinion of the Justices,* 110 N.H. at 364, 266 A.2d at 826. Far from violating the separation of powers doctrine, the proposed statute actually buttresses the underlying delegation of rulemaking authority by restricting the extent to which the executive branch can engage in unilateral lawmaking. For these reasons, the creation of a legislative veto is not *per se* unconstitutional.

 The proposed RSA 541-A:2-b and -d require that proposed rules be presented to standing committees of both the house of representatives and the senate for their approval. The approval of a quorum of the standing committees of both houses is required, and a quorum is defined as a majority of the members of the committee. The proposed RSA 541-A:2-c would allow the president of the senate and the speaker of the house of representatives by agreement to waive the requirement for committee approval.

This wholesale shifting of legislative power to such small groups in either house cannot fairly be said to represent the "legislative will." Such a statutory scheme is unconstitutional. Under the constitution, the supreme legislative authority is vested in the house of

representatives and the senate, with each having a negative upon the other. N.H. CONST. pt. 2, art. 2. Part 2, art. 5 specifies a wide range of activities in which the General Court may engage. The State constitution further provides that neither the house of representatives nor the senate may act in the absence of a specified quorum. N.H. CONST. pt. 2, arts. 20, 37. Left unstated, yet implicit in this constitutional scheme, is the requirement that the legislative authority of the government may be exercised only by a quorum of the two bodies of the General Court. Although the legislature may delegate a portion of the legislative authority to an administrative agency which is not subject to this requirement, it may not delegate its lawmaking authority to a smaller legislative body and thereby evade the requirement for action by a majority of a quorum of both legislative bodies. *State v. A.L.I.V.E. Voluntary*, 606 P.2d 769, 777–78 (Ala. 1980); *cf. Opinion of the Justices*, 96 N.H. at 522, 83 A.2d at 741.

At first glance, this opinion might seem inconsistent with the *Opinion of the Justices*, 110 N.H. 359, 266 A.2d 823 (1970), in which we indicated that a statute conditioning pay raises ordered by the Governor pursuant to a legislative grant of authority to do so upon the approval of the fiscal committee of the legislature was not unconstitutional. *Id.* at 364–65, 266 A.2d at 826–27. In that *Opinion*, the justices stressed that the fiscal committee was not exercising legislative authority but was acting as an administrative arm of the legislature. The approval or rejection of proposed rules, in contradistinction to salary increases, however, is undoubtedly an exercise of legislative power. The proposed statute is therefore distinguishable from that upheld in that *Opinion*, and that *Opinion* is no authority for the proposition that the legislature may generally delegate its power to a majority of a quorum of a single committee or indeed to the president of the senate or the speaker of the house of representatives.

 Proposed RSA 541-A:2-d violates the State constitution in that a proposed rule may become effective only if expressly approved by standing committees of both houses or not expressly rejected by a standing committee of either house. No executive approval is required, and disapproval by the chief executive does not affect the adoption of the rule. This is equivalent to the legislature "passing" such a rule. *Clark v. Valeo*, 559 F.2d 642, 685 (D.C. Cir.) (Mackinnon, J., dissenting), *aff'd mem. sub nom., Clark v. Kimmitt*, 431 U.S. 950 (1977); *see Opinion of the Justices*, 96 N.H. 517, 521, 82 A.2d 738, 740–41 (1950). There is no provision in the proposed bill for laying the rule before the chief executive for his

approval. The Governor is not mentioned and is given no authority under the scheme.

 Under our constitution, all bills, N.H. CONST. pt. 2, art. 44, or resolutions, N.H. CONST. pt. 2, art. 45, must be presented to the executive for his approval and are therefore subject to his veto. There is no reason to treat rules proposed by administrative agencies, yet effective only upon approval of both houses, any differently from bills or resolutions. *See Opinion of the Justices*, 96 N.H. at 521, 83 A.2d at 740–41.

 The objectives of the proposed legislation could be met, and the constitutional objections minimized, if the statute were to provide for approval or rejection of the rules to be determined by a majority of a quorum of both houses, possibly acting pursuant to the recommendations of significantly representative committees, and then presented to the Governor for his approval. In such an instance, if any rule was rejected by either house or the Governor, its resubmission as a law would have to await enactment by the General Court and would be subject to a veto as with bills. Under such a scheme, a rule could not be "enacted" by one person in any agency or one or two persons in the legislature.

Other States, such as Wisconsin, have followed the British example and have created a specialized bipartisan joint committee to review administrative rules within specified time frames. *See* WIS. STAT. § 13.56(1) (1979–80). If the committee votes to suspend a rule, it must place before "each house of the legislature for consideration at any regular session, a bill to repeal the . . . rule." *Id.* § 13.56(2)(f). This type of procedure gives proper deference to the full legislative body as well as to the Governor. In fact, for proper oversight and recognition of the dual role played by the other two branches in the legislative process, the Governor should have similar authority to suspend administrative rules and then propose formal legislative repeal. While neither of the other two branches of State government may currently generally "veto" proposed rules, if a change is to occur, we conclude that constitutional symmetry requires that both the legislature and the Governor play a major role in any such new procedure.

During the suspension of an agency rule by either the Governor or a legislative committee when the house or senate are not in session, the *status quo* must remain. If no action is taken to suspend the regulation within a certain time frame, it could become effective and would have the force and effect of law. Because approval of the legislature and Governor, absent overriding a veto, is neces-

sary for a bill to become a law, both should have the authority to leave the "law" as it was prior to the proposed rule.

With substantial changes, the proposed legislation could be constitutionally enacted.

WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS, III
DAVID A. BROCK
JOHN W. KING

June 23, 1981