Request of the Senate
No. 95-273

OPINION OF THE JUSTICES

(Certain Evidence in Sexual Assault Cases)

July 19, 1995

The following Resolution, Senate Resolution No. 3, requesting an opinion of the justices, was adopted by the Senate on April 13, 1995, and filed with the supreme court on April 18, 1995:

"Whereas, there is pending in the senate, HB 301, 'An act prohibiting certain evidence in sexual assault cases'; and

"Whereas, an amendment to HB 301 has been adopted by the house of representatives; and

"Whereas, RSA 632-A:6, III-a as proposed by HB 301 as amended would, in sexual assault cases, prohibit introducing into evidence the victim's manner of dress at the time of the sexual assault to infer consent; and

"Whereas, doubt has arisen as to the constitutionality of the provisions of said bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Would enactment of HB 301, as amended, prohibiting evidence from which consent could be inferred in a sexual assault prosecu-

tion, be improper because it may result in preempting an accused's right to produce all proofs that may be favorable to the accused and cross-examine witnesses in violation of Part I, Article 15 of the New Hampshire Constitution?

2. Would enactment of HB 301, as amended, prohibiting evidence from which consent could be inferred in a sexual assault prosecution, impinge upon an accused's right to due process in violation of Part I, Article 15 of the New Hampshire Constitution?

3. Would any other provision of the New Hampshire Constitution be violated by the enactment of HB 301, as amended?

"That the clerk of the senate transmit copies of this resolution and HB 301, as amended, to the Justices of the Supreme Court."

The following response is respectfully returned:

*To the Honorable Senate*:

The undersigned justices of the supreme court now submit the following replies to your questions. Following our receipt of your resolution on April 18, 1995, we invited interested parties to file memoranda with the court on or before June 5, 1995.

HB 301 (the bill) proposes to amend RSA 632-A:6 (Supp. 1994) by inserting after paragraph III a new paragraph to read:

> III-a. The victim's manner of dress at the time of the sexual assault shall not be admitted as evidence in any prosecution under this chapter to infer consent.

Your first question asks whether enacting the bill "prohibiting evidence from which consent could be inferred in a sexual assault prosecution [would] be improper because it may result in preempting an accused's right to produce all proofs that may be favorable to the accused and cross-examine witnesses in violation of Part I, Article 15 of the New Hampshire Constitution." We answer this question in the negative.

Part I, article 15 of the State Constitution provides that every criminal defendant "shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense." Whether or not particular evidence constitutes "favorable" proof is to be assessed by considering the relevance of the evidence and its potential for confusing the issues or misleading the jury. *See State v. Woodsum*, 137 N.H. 198, 201, 624 A.2d 1342, 1344 (1993). Part I, article 15 does not guarantee a criminal defendant "an absolute right to introduce testimony which is not relevant to the issues being tried." *State v. Hunt*, 122 N.H. 59, 60, 440 A.2d 1126, 1127 (1982); *see also United*

*States v. Duncan*, 855 F.2d 1528, 1533 (11th Cir. 1988) (federal rule prohibiting evidence of victim's sexual history "was premised on the precept that an accused does not have a constitutional right to present irrelevant evidence"), *cert. denied*, 489 U.S. 1029 (1989).

When a defendant charged with sexual assault claims that the alleged victim consented, the State's burden is not to prove the defendant's subjective state of mind but "whether a reasonable person in the circumstances would have understood that the victim did not consent." *State v. Ayer*, 136 N.H. 191, 196, 612 A.2d 923, 926 (1992). The inquiry focuses on the victim's objective manifestations of her unwillingness to engage in the charged conduct. *Id.* at 195-96, 612 A.2d at 926. The question of lack of consent thus concerns the victim's demonstrative and verbal conduct. *See* RSA 632-A:6, III (Supp. 1994) ("Consent is no defense if, at the time of the sexual assault, the victim indicates by speech or conduct that there is not freely given consent to performance of the sexual act.").

The record before us contains legislative history surrounding this bill. Explaining the purpose of the proposed legislation, Representative Clair Snyder, prime sponsor of the bill, remarked, "There are some misguided individuals who still believe the old saw, 'she was asking for it,' because of her manner of dress. . . . No one should be constrained in their manner of dress no matter how brief or tight—for fear of inviting rape. We must remove this as an excuse for this despicable act." *See* Hearing on HB 301 Before the Senate Judiciary Committee at 1 (March 29, 1995). Representative William McCann, co-sponsor of the bill, echoed this view: "I don't think that the defense of the alleged rapist should be that she was 'asking for it because she had tight jeans.' . . . It isn't relevant to the fact that a woman was raped." *Id.* at 3.

The bill's attempt to preclude manner-of-dress evidence to imply consent thus rests on the premise that such evidence is not relevant to the issue. A mock cross-examination of a robbery victim in the style of a manner-of-dress interrogation of a sexual assault victim illustrates the point:

[Q] What were you wearing at the time, Mr. Smith?
[A] Let's see . . . a suit. Yes, a suit.
[Q] An *expensive* suit?
[A] Well, yes, I'm a successful lawyer, you know.
[Q] In other words, Mr. Smith, you were walking around the streets late at night in a suit that practically advertised the fact that you might be a good target for some easy money, isn't that so? I mean, if we didn't know better, Mr. Smith, we

might even think that you were *asking* for this to happen, mightn't we?

Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 COLUM. L. REV. 1, 26 n.163 (1977).

■ We have recognized that the rape shield statute, RSA 632-A:6, represents an acknowledgment of the rights of personal privacy of alleged victims of sexual assault, *see State v. Howard*, 121 N.H. 53, 59, 426 A.2d 457, 461 (1981), noting that "the old concept of equating a woman's promiscuity with lack of credibility is seriously outdated and is no longer, if it ever truly was, deserving of respect by the courts." *Id.* at 60, 426 A.2d at 462. We believe that the same may be said about a victim's mode of dress. *Cf. United States v. Saunders*, 736 F. Supp. 698, 704 (E.D. Va. 1990) (evidence at most suggested defendant believed victim was "woman of easy virtue," and this "state of mind is neither relevant, nor exculpatory"), *aff'd*, 943 F.2d 388 (4th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992). This bill may be construed as a legislative determination that society will not permit an individual to rely upon another's manner of dress as a signal of consent to sexual activity. Such a determination is within the legislature's authority. *Cf. State v. Wong*, 125 N.H. 610, 622, 486 A.2d 262, 270 (1984) (legislature has constitutionally recognized authority to define criminal acts).

■ Because such evidence has no relevance to the issue of consent, its tendency to humiliate the victim and mislead and confuse the jury *a fortiori* outweighs its probative value and leads to its inadmissibility. We conclude that evidence of a sexual assault victim's manner of dress when offered on the issue of consent is not "favorable proof" or evidence about which a defendant has the right to cross-examine. *Cf. Woodsum*, 137 N.H. at 202, 624 A.2d at 1345 (court concludes as matter of law that rejection of beneficial plea offer is not "favorable proof," where little if any probative value outweighed by risk of prejudice).

■ Your second question asks whether enactment of HB 301 would "impinge upon an accused's right to due process in violation of Part I, Article 15 of the New Hampshire Constitution." When we interpret statutes already in effect, they are "construed to avoid conflict with constitutional rights wherever reasonably possible." *State v. Smagula*, 117 N.H. 663, 666, 377 A.2d 608, 610 (1977). We believe that this axiom also authorizes us to announce that proposed legislation is not offensive to the constitution, for it is understood

that the statute if enacted will be construed harmoniously with an individual's constitutional rights in any given case.

 HB 301, as amended, does not propose a blanket exclusion of manner-of-dress evidence in sexual assault prosecutions. Rather, the plain language of the bill forbids introduction of such evidence only on the issue of consent. As we have already observed, the probative value of a victim's manner of dress *per se* to imply consent to sexual activity is not demonstrable. The evidence may be relevant, however, for a purpose unrelated to consent. And, although such situations are not immediately apparent, we are unwilling in an Opinion of the Justices to categorically rule out the possibility that there may be situations in which the manner of dress is so interrelated with contemporaneous conduct of the victim that it could provide evidence helpful to the defense. Therefore, we conclude that, were this bill enacted, a defendant in a sexual assault prosecution would have a right to move for the opportunity to demonstrate that due process requires admission of manner-of-dress evidence because the probative value of the evidence in the context of the particular case outweighs its prejudice to the victim and its tendency to mislead and confuse the jury. *See Howard*, 121 N.H. at 58-59, 426 A.2d at 460-61. A hearing held on such a motion would take place outside the presence of the jury. *See id.*

Your third question asks whether "any other provision of the New Hampshire Constitution [would] be violated by the enactment of HB 301, as amended." "We respectfully decline to answer this question because of its generality." *Opinion of the Justices (Limitation on Civil Actions)*, 137 N.H. 260, 269, 628 A.2d 1069, 1074 (1993).

Finally, "[w]e note that our response is necessarily qualified," *Opinion of the Justices (Alternate Jurors)*, 137 N.H. 100, 105, 623 A.2d 1334, 1338 (1993), because we cannot anticipate every possible fact pattern that may arise and test the limits of the bill, *id.*

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

July 19, 1995

*Jeffrey R. Howard*, attorney general (*William H. Lyons*, senior assistant attorney general, on the memorandum), filed a memorandum in support of negative answers to the questions presented.

*James E. Duggan*, of Concord, chief appellate defender, and *Albert E. Scherr*, of Concord, filed a memorandum in support of affirmative answers to the questions presented.

*Representative Loren Jean*, of Litchfield, filed a memorandum in support of affirmative answers to the questions presented.