Merrimack
No. 2001-378

THE STATE OF NEW HAMPSHIRE

v.

RICHARD NOWLIN

Argued: November 14, 2002
Opinion Issued: March 6, 2003

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, by brief and orally, for the defendant.

DUGGAN, J. The defendant, Richard Nowlin, was convicted of three counts of aggravated felonious sexual assault. RSA 632-A:2, I. The only issue on appeal is whether the Superior Court (*McGuire*, J.) erred when it denied the defendant's request to argue an inference of consent from the victim's manner of dress. We affirm.

The following facts are supported by the trial testimony. The defendant and the victim dated in high school. After the relationship ended, they remained friends and sometimes had sex at the victim's apartment. On May 18, 1999, the victim saw the defendant riding his bicycle while she was on a bus. She signaled to him that she wanted him to come to her apartment after work.

The victim returned to her apartment after work that evening, showered, put on a night-shirt but no underwear, and had started to cook dinner when the defendant arrived. She had her legs covered with a quilt while they talked, watched television and played cards. The victim told the defendant that she had a boyfriend and he told her that he was engaged. After the defendant won a card game, the victim kissed him on his cheek.

Later, as they watched television, the defendant kissed the victim but she pushed him away. As they continued watching television, the defendant began kissing her neck and shoulders. The victim told him to stop and he did. The defendant then slid the victim onto the floor and continued kissing her. The victim repeatedly told the defendant to stop.

The defendant pulled the victim's night-shirt off and forced the quilt out of her hands. He performed cunnilingus. When he told the victim to remove his pants, she refused. He then removed his pants and had intercourse with her as she continued to protest. Afterward he said, "[O]h my God, what have I done?" The defendant told the victim not to tell the police, but the victim insisted that she would report the incident.

The defendant left the victim's apartment and went to the apartment that he shared with his fiancée. She asked the defendant why he was visibly upset. The defendant responded, "My worst fear, forced sex." He explained that he became frustrated with the victim because she refused to undo his pants. The defendant asked his fiancée to go to the victim's apartment to persuade her not to report the incident to the police.

When the fiancée arrived at the victim's apartment, she observed that the victim was upset. The victim said that the defendant had raped her. After the fiancée left, the victim called a friend and told her that the

defendant had raped her. She then went to the Concord Police station and was interviewed by Officer John Thomas.

After talking with Officer Thomas, the victim went to Concord Hospital for an examination while Officer Thomas telephoned the defendant. The defendant admitted to Thomas that he heard the victim say "no" but continued to kiss, fondle and have intercourse with her. He explained that he apologized afterwards because they were both upset.

At trial, the defendant testified that he and the victim had previously had intercourse many times and that she had never before indicated a lack of consent. With respect to this incident, the defendant testified that he was unable to remember what happened. The jury returned a guilty verdict on three counts of aggravated felonious sexual assault.

Before trial, the defendant had filed a motion *in limine* to admit the victim's manner of dress. The defendant also sought to argue an inference of consent from her manner of dress. The superior court granted the motion to admit the victim's manner of dress because the State intended to introduce evidence of her manner of dress to show the defendant's ability to undress her. The court, however, denied the defendant's request to argue an inference of consent. The court indicated that the defendant could renew his motion should the testimony make it fundamentally unfair for him not to be able to argue an inference of consent.

The defendant argues that the superior court improperly denied him the opportunity to argue an inference of consent based upon the victim's manner of dress. We disagree.

The "rape shield statute" provides that "(t)he victim's manner of dress at the time of the sexual assault shall not be admitted as evidence in any prosecution under this chapter to infer consent." RSA 632-A:6, III-a (Supp. 2002). In *Opinion of the Justices (Certain Evidence in Sexual Assault Cases)*, 140 N.H. 22, 26 (1995), we reviewed HB 301, which became paragraph III-a of RSA 632-A:6, and we concluded that RSA 632-A:6, III-a does not violate a defendant's constitutional right to present all proofs that may be favorable to him because a victim's manner of dress has no relevancy on the issue of consent. We held that RSA 632-A:6, III-a does not violate a defendant's due process rights because it is not a blanket exclusion of relevant manner of dress evidence. *Id.* at 27; *cf. State v. MacRae*, 141 N.H. 106, 111 (1996). We said that while "the probative value of a victim's manner of dress *per se* to imply consent to sexual activity is not demonstrable," due process may require admission of such evidence in some cases. *Opinion*, 140 N.H. at 27.

*Opinion of the Justices* was necessarily qualified because it could not "anticipate every possible fact pattern that may arise." *Id.* We were unwilling "to categorically rule out the possibility that there may be

situations in which the manner of dress is so interrelated with contemporaneous conduct of the victim that it could provide evidence helpful to the defense." *Id.* We thus required that the court afford the defendant the "right to move for the opportunity to demonstrate that due process requires admission of manner-of-dress evidence because the probative value of the evidence in the context of the particular case outweighs its prejudice to the victim and its tendency to mislead and confuse the jury." *Id.*

Here, the defendant had the opportunity, during the pre-trial hearing, to demonstrate that the probative value outweighed the prejudice to the victim. We must determine whether the superior court's exercise of discretion precluding the defendant from arguing an inference of consent was unsustainable because it was clearly untenable or unreasonable to the prejudice of his case. *See State v. Spaulding*, 147 N.H. 583, 589 (2002).

The defendant relies upon *Brown v. State*, 581 S.W.2d 549 (Ark. 1979), in support of his argument that "a woman's manner of dress may, in the context of the relationship between the parties, language, and non-verbal communication, be probative of consent." He argues that "because the jury learned in [the victim's] direct examination that she wore only a t-shirt, and learned about the other events that comprised the relationship and the evening, the potential for prejudice to [the victim] was low." The defendant further argues that because the State introduced evidence of her manner of dress to show how the assault occurred, he must be allowed to counter with his own explanation.

The defendant's arguments, however, do not meet the standard suggested in *Opinion of the Justices; i.e.*, the defendant has not shown that the victim's manner of dress was so interrelated with her contemporaneous conduct that her manner of dress was "evidence helpful to the defense." Aside from kissing the defendant on the cheek once, the victim's contemporaneous conduct clearly indicated a lack of consent. She physically rebuffed his advances and unequivocally told him to stop. In fact, just after the incident, the defendant admitted to his fiancée that he became frustrated with the victim when she would not undo his pants and had intercourse with the victim despite her protests. He admitted to the police that "he heard [the victim] say 'no' once. . . . [H]e stopped for a brief moment but continued to have sex with her." Given these facts, nothing in the victim's contemporaneous conduct made her manner of dress probative on the issue of consent.

*Affirmed.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; BRODERICK, J., concurred specially.

BRODERICK, J., concurring specially. I concur in the result reached by the majority in this case. I write separately because I disagree with the majority's reading of *Opinion of the Justices (Certain Evidence in Sexual Assault Cases)*, 140 N.H. 22 (1995), and because the defendant specifically requested that we revisit and clarify our holding in that *Opinion*.

It is clear from the language in *Opinion of the Justices* that we did believe HB 301 proposed a blanket exclusion of manner-of-dress evidence on the issue of consent in sexual assault prosecutions. Specifically, in response to the Senate's first question whether enactment of HB 301 would be improper because it might result in preempting an accused's right to produce all proofs that may be favorable in violation of Part I, Article 15 of the State Constitution, we answered in the negative and stated:

> Because such evidence has no relevance to the issue of consent, its tendency to humiliate the victim and mislead and confuse the jury *a fortiori* outweighs its probative value and leads to its inadmissibility. We conclude that evidence of a sexual assault victim's manner of dress when offered on the issue of consent is not "favorable proof" or evidence about which a defendant has the right to cross-examine.

*Id.* at 26. With regard to the Senate's second question whether enactment of HB 301 would impinge upon an accused's right to due process in violation of Part I, Article 15 of the State Constitution, we stated:

> HB 301, as amended, does not propose a blanket exclusion of manner-of-dress evidence in sexual assault prosecutions. Rather, the plain language of the bill forbids introduction of such evidence *only on the issue of consent*. As we have already observed, the probative value of a victim's manner of dress *per se* to imply consent to sexual activity is not demonstrable. *The evidence may be relevant, however, for a purpose unrelated to consent.* And, although such situations are not immediately apparent, we are unwilling in an Opinion of the Justices to categorically rule out the possibility that there may be situations in which the manner of dress is so interrelated with contemporaneous conduct of the victim that it could provide evidence helpful to the defense. Therefore, we conclude that, were this bill enacted, a defendant in a sexual assault prosecution would have a right to move for the opportunity to demonstrate

that due process requires admission of manner-of-dress evidence because the probative value of the evidence in the context of the particular case outweighs its prejudice to the victim and its tendency to mislead and confuse the jury. A hearing held on such a motion would take place outside the presence of the jury.

*Id.* at 27 (citations omitted; emphasis added). That we believed HB 301 to propose a blanket exclusion of manner-of-dress evidence in sexual assault prosecutions on the issue of consent was confirmed in *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562, 573-74 (1997). Accordingly, I disagree with the majority's reading of *Opinion of the Justices*, 140 N.H. at 26-27, to allow a victim's manner of dress to be used, expressly or by inference, on the issue of consent. Rather, I believe the *Opinion* stood for the proposition that manner of dress, when so interrelated with contemporaneous conduct, might be admissible for some purpose other than consent.

The majority properly cites *State v. Spaulding*, 147 N.H. 583, 589 (2002), for the appropriate standard of review in this case. I suggest, however, that *Spaulding* and its predecessor, *State v. Howard*, 121 N.H. 53, 58-59 (1981), limit the application of the rape shield law in certain cases and provide the bridge between *Opinion of the Justices*, 140 N.H. at 26-27, and the case at hand. The former two cases recognize that there may be instances when a defendant, confronted with prosecution under RSA chapter 632-A, can demonstrate that the admission of manner-of-dress evidence on the issue of consent is constitutionally mandated. As the majority correctly decides, this is not such a case.